NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
November, 1879.

## WALSH v. WALSH.

*In the matter of the probate of the will of* PATRICK
WALSH, *deceased.*

Where the testimony of the witnesses to a will fails to prove any request
by the testator to the witnesses to sign as such, but the attestation clause
contains a recital of such request, such recital supplies the defect,
especially where the will was executed in the presence of an attorney,
who signed as one of the witnesses, but was not called, being deceased.

OBJECTION to the probate of the will of Patrick
Walsh.

The will propounded was dated 26th November, 1878,
witnessed by James J. Butler and John J. Fagan. The
latter was an attorney, who died previous to the tes-
tator.

The facts appear sufficiently in the opinion.

JOHN CROOK, *for proponent.*

CULVER & WRIGHT, *for contestant.*

THE SURROGATE.—A careful review of the testimony
given in behalf of the proponent will show that the
witness, Butler, swore that Coleman requested him to
attend to witness decedent's will; that he went into a
room back of Coleman's store, where Coleman, Fagan,
the attorney, and decedent were, when decedent signed
the paper propounded, and thereupon witness and
Fagan signed as witnesses; that Fagan asked decedent
some questions about the will, but witness could not

remember what they were; that he had no conversation with decedent, but Coleman and decedent were speaking about the will, and that he thought Coleman told him after he entered the room that he was there to sign the will.  This is the substance of the testimony of Butler, and he fails to prove that decedent, at the time of executing the instrument, published it as his will; that he requested the witnesses to subscribe as such.   It is clear that on such testimony the will should not be admitted to probate, unless the defects are supplied by other testimony, or are cured by the attesting clause.  The witness Coleman, who appears to have acted for the decedent, testifies substantially, that decedent requested him to get some one to draw his will; that he suggested Mr. Fagan, and procured him, who drew it and read it to decedent; that decedent asked witness, who would be witnesses; that he, Coleman, suggested Butler; that decedent assented, and that witness requested Butler to attend for that purpose, and that when the parties had assembled in the back room, Mr. Fagan placed a paper on the table, and asked decedent to sign it, whereupon decedent did so, and Fagan put to him the regular questions, but witness could not remember the exact words; the substance was : "Do you declare this to be your last will and testament," and decedent answered: "I do," and that the witnesses signed; that to the best of his knowledge, Fagan asked Butler, in the presence of the parties, if he would witness the will; that Fagan got the terms of the will from decedent; that after Fagan had drawn it, and read it to decedent, in witness's presence, decedent requested a change of the legacy given to his wife from $1,000 to $1,600, and desired Fagan to be par-

ticular to have the legacy in behalf of his wife's niece stated to be in full of wages.

This proof, added to that of the subscribing witness, Butler, fails to prove any request on the part of the decedent to the witnesses to subscribe as such. The will must be rejected, unless the attestation clause, signed by the subscribing witnesses, supplies the defect.

It appears that Mr. Fagan, who drew the will, was a lawyer, although there is not any positive evidence that the instrument is in his handwriting. It also appears that he was present, attending to its execution. The attestation clause is in due form, and recites the facts requisite to a due execution of the instrument propounded. The will was drawn by Mr. Fagan, doubtless, especially as it appears that he was an attorney. It may be safely assumed that he understood, at the time, what the requisites to the proper execution of the instrument, as a last will and testament, were, and as the testimony already in does not contradict any of the recitals in the attestation clause, but, so far as it goes, is corroborative thereof, and there is a failure of memory as to the rest, I am of opinion that, under the authorities, the attestation clause thus subscribed supplies the defect, and entitles the will to probate. In Pcebles v. Case (2 Bradf., 226), it was held, that if the subscribing witnesses shall have lost all recollection of the execution of the will, the court, if satisfied from other evidence that they did in fact witness it, may admit it to probate, the performance of the usual formalities being inferred from the recitals of the testamentary clause. But in the case under consideration all the material facts appear to be substantially proved, except the request of the tes-

tator to the subscribing witnesses. That request is re-cited by the testatum clause, and is subscribed by the attorney, who doubtless understood what was necessary to the proper execution of the instrument, and the full significance of his signature to an attestation clause, reciting that the requisites stated had occurred. In the Matter of the will of Kellum (52 *N. Y.*, 517), at page 519 Chief Justice CHURCH says: "If the attestation clause is full, and the signatures genuine, and the circumstances corroborative of due execution, and no evidence disproving the compliance in any particular, the presumption may be lawfully indulged that all provisions of the statute were complied with, although the witnesses are unable to recollect the execution, or what took place at the time." In that case the subscribing witnesses failed to prove anything more than the genuineness of their signatures, and some eleven years had elapsed since the execution; it also appeared that an experienced attorney had drawn the will, and attended to its execution, and from his habit he testified to the truth of the matters stated in the attestation clause, he remembering the fact that he drew the will at the request of decedent. In Lawrence v. Norton (45 *Barb.*, 448), a will was held sufficiently proved which was in the handwriting of the testator, and contained a testatum clause, declaring that all the statutory requisites as to execution were complied with. Two of the subscribing witnesses were dead, and the third recollected nothing as to the execution, and could only prove his own handwriting. The handwriting of the decedent and the subscribing witnesses, and the signature of the testator, were proved.

In the Trustees of Auburn Seminary v. Calhoun (25

WALSH v. WALSH.

*N. Y.*, 422), it was held, that the purpose of requiring a declaration of the testator, that the instrument is his will, is to make it certain that he is not induced to execute a will under the suspicion that it is some other kind of instrument; and the fact that he knew it to be a will, may, therefore, be established against the testimony of all the subscribing witnesses.

This case certainly goes far, as it seems to me, to nullify the positive provisions of our statute (3 *R. S.* [6 ed.], 63, § 38, subd. 3), providing that the testator, at the time of subscribing or acknowledging his signature, shall declare the instrument so subscribed to be his last will and testament. This declaration may undoubtedly be made by an audible reading of the will in the presence of the witnesses, or a like reading by a third person in behalf of the testator; but it seems to me, that while an inaudible reading of the instrument by the decedent would be sufficient evidence that he knew the instrument to be his will, it cannot be said to be a *declaration* of that fact to the subscribing witnesses. This criticism is not necessary, however, for the decision of this case. The declaration that it was his will is proved both by Coleman and the attestation clause; and that certain inquiries were made by the attorney of the decedent, at the time of signing, is proved by the subscribing witness, Butler, and satisfactorily established by the attestation clause, signed by an attorney as a subscribing witness. Moreover, the clause, reciting the decedent's request to the witnesses, is aided by proof that the decedent knew of the necessity of subscribing witnesses; that Butler attended as such, and they subscribed in his presence.

I am of the opinion that the proof of execution is suffi-

cient, and that the contestants should be put to their proof.

Ordered accordingly.