NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—August, 1882.

RIEGELMANN v. McCoy.

*In the matter of the estate of* JOHN RIEGELMANN, *de-
ceased.*

*It seems,* that, while any controversy over the genuineness and validity of a
will is pending in a Surrogate's court, or upon an appeal therefrom,
the Surrogate has no authority to direct the payment of any legacy ex-
cept in such contingencies as are expressly provided for by the statutes;
in interpreting which, it is immaterial whether they have or have not
failed to provide for cases more deserving of favorable consideration
than those to which they expressly relate.

Decedent's will having been admitted to probate in December, 1881, and
an appeal from the decree having been taken and perfected, his
widow, being also the executrix, and a principal legatee, applied, during
the pendency of the appeal, for an advance to her of some portion of
the estate, not exceeding in value the amount to which she would
be entitled, if decedent should be finally adjudged to have died intes-
tate.

*Held,* that the prayer of the petition must be denied, the statute conferring
upon the Surrogate no authority to grant the same.

No inference can be drawn from the language of Code Civ. Pro., §§ 2717–
2719, of an intention to depart from the doctrine and practice prevail-
ing under the Revised Statutes (part 2, ch. 6, tit. 3, §§ 45, 82, 83), ac-
cording to which, *it seems,* such an advance under the circumstances
would have been refused.

Riegelman v. Riegelman, 4 *Redf.,* 492—compared.

PETITION by Rosina Riegelmann, decedent's widow and
executrix, for payment of a legacy; opposed by Rosina
McCoy, decedent's daughter, and others.    The facts ap-
pear sufficiently in the opinion.

BOARDMAN & BOARDMAN, *for executrix.*

EVARTS, SOUTHMAYD & CHOATE, *for Rosina McCoy and others.*

FREDERICK R. SHERMAN, *guardian ad litem.*

THE SURROGATE.—This decedent died in May, 1880, leaving a widow and several children. In the same month, an instrument purporting to be his will was propounded in this court. Three of his surviving children filed objections thereto, and, in December, 1881, the issues thus raised were decided by my predecessor in favor of the proponents. An appeal was taken, and proceedings thereon were pending in the Supreme Court when this petition was filed, and when, after argument, it was submitted for my determination. The decree, by which the will was admitted to probate, has been since reversed.

During the pendency of the contest in this court, an application similar to that which is now presented was made, in behalf of the decedent's widow, who is one of the principal legatees. She asked for an advance of some portion of the estate, not exceeding in value the amount to which she would be entitled, if the decedent should be finally ascertained to have died intestate. The 18th chapter of the present Code of Civil Procedure had not then gone into effect. The application was based ·pon a provision of the Revised Statutes to which I shall more particularly refer hereafter. The Surrogate dismissed the petition upon two grounds:

*First.* Because it could not appear, until the admission of the will to probate, that the decedent's widow was entitled to a *legacy,* while, on the other hand, it could not appear that she was entitled to a *distributive share* of the estate, until the alleged will had been rejected and the decedent had been adjudged intestate.

*Secondly.* Because the estate was at the time in charge of a temporary administrator or collector, as such an offi-

cer was then styled, to whom the Surrogate could give no such authority as the petitioner invoked (Riegelman v. Riegelman, *4 Redf., 492*).

Neither of the grounds upon which this motion was formerly denied now exists, as the will has been admitted to probate, and the estate is in the hands of this petitioner as its executrix. But the respondents in this proceeding claim that, by their appeal to the General Term from the decree granting probate, the right of the executor to discharge legacies, in whole or in part, as well as the authority of the Surrogate to direct him so to do, have been effectually stayed. They insist, indeed, that, as the controversy over the probate of the will began before September 1, 1880, and before the second part of the Code of Civil Procedure went into effect, this application must be regarded as a step in that proceeding, and must, therefore, stand or fall by the law which was in force prior to that date. If this view be correct, the power of the Surrogate to grant this petition has been undoubtedly suspended by the appeal. But, for reasons which are fully set forth in the Matter of Sexton (*ante*, 3), I am convinced that the claim which is the basis of this application must be tested by the provisions of the Code of Civil Procedure.

In order to interpret those provisions aright, it is well to make a careful examination of the statutes in force when they were adopted.

Section 45 of title 3, chapter 6, part 2 of the Revised Statutes (*3 Banks, 6th ed., 98*) is as follows:

"After the expiration of one year from the granting of letters testamentary or letters of administration, the executors or administrators shall . . . . pay the

legacies, etc.   Such payment may be enforced by the Surrogate."

Sections 82 and 83 of the same title (*3 Banks, 6th ed., 106*) provide that "any person entitled to a legacy, or to a distributive share of the estate of a deceased person, at any time *previous* to the expiration of one year from the granting of letters testamentary, or of administration, may apply to the Surrogate, after giving reasonable notice to the executor or administrator, to be allowed to receive such portion of such legacy or share as may be necessary for his support," and that, if it shall appear that the assets in the hands of the executor or administrator exceed by one third the amount of all debts, etc., then known, such sum as the Surrogate shall deem necessary for the petitioner's support may be advanced, upon the execution of satisfactory bonds.

I can find no intimation, in any decided case, that an advance under the authority of these provisions was ever sanctioned during the pendency of proceedings for probate or revocation of probate, or of proceedings on appeal from a decree admitting to probate, or denying revocation thereof.   The entire scheme of the Revised Statutes was simple and consistent.   The holder of letters was allowed one year, within which to collect the assets and discharge the debts.   He was expressly forbidden, by a statute which is still in force, to pay any legacies during that time, unless the will so directed, or unless the Surrogate so ordered, in pursuance of the authority given him by the provisions above quoted (see section 43, title 3, chapter 6, part 2 of Revised Statutes; *3 Banks, 6th ed., 98*).   It was supposed that, after a year had elapsed, his knowledge of the condition of the

estate would inform him what could prudently and justly be done, by way of discharging the specific and general legacies. And a legatee who was impatient of delay might straightway apply to the court for relief. One year was allowed also, after the probate of a will, for the institution of proceedings for revocation, and after that year had expired, if no such proceedings had been commenced it would be ordinarily practicable to make a complete distribution of assets. It is very clear that the grant of authority to the Surrogate, to direct partial distribution within the year, was designed to cover only the claims of legatees under uncontested wills. Now, there was nothing in the scheme of the Code of Civil Procedure, as it was originally passed, which differed in any considerable degree from this system of the Revised Statutes. In place of sections 82 and 83, to which reference has just been made, there were introduced in the Code sections 2717, 2718 and 2719. They provide that a person *entitled to a legacy or distributive share*, etc., may apply for its payment at any time after the expiration of a year from the grant of letters; that the Surrogate must, thereupon, make such a decree as justice requires, but that he must dismiss the petition if the executor or administrator makes sworn answer denying the validity or legality of the claim, or if it is not satisfactorily proved that there are assets applicable to the payment of the claim, and which may be so applied without injuriously affecting the rights of others. And section 2719 declares that, although a year has not expired, a decree for payment may be made, if it appears that there is property in the hands of the executor or administrator applicable to the payment of debts, lega-

cies and expenses, and exceeding, by at least one third, the amount of all known debts and claims against the estate, of all legacies which are entitled to priority over the petitioner's claim, and of all legacies and distributive shares of the same class, and that the payment of the legacy or share, or some part thereof, is necessary for the support or education of the petitioner.

It will be noticed that, in neither of these sections, is there any intimation that, during the contest, in this or in an appellate court, over the validity or integrity of a will, any advance can lawfully be made to one claiming as legatee. No inference, I think, can be drawn from the language of these sections that, in this respect, any departure was intended from the doctrine and practice which had obtained under the Revised Statutes.

Now, what does the Code declare to be the effect of an appeal from a decree admitting a will to probate? Section 2582 provides that such an appeal does not necessarily stay the issuing of letters, but that, when letters are issued under such circumstances, they " confer upon the person named therein all the powers and authority, and subject him to all the duties and liabilities of an executor . . . . . in an ordinary case, except that they do not confer power to sell real property by virtue of a provision in the will, *or to pay or satisfy a legacy*, . . . . until after the final determination of the appeal."

This is certainly very explicit. If an executor can ever, under such circumstances, make advances to legatees, it can only be by special order of the Surrogate. Now, it is not claimed by the petitioner's counsel that there is any express statutory authority for issuing such an order as he desires.

The claim that such power can lawfully be exercised in the present case is solely supported by an argument from the analogy of other cases in some respects similar. For example, it is provided by section 2650 of the Code that, where a will has been admitted to probate, and proceedings are afterwards commenced for revocation, the executor must suspend until the entering of a decree all proceedings, "except for the recovery or preservation of property, the collection and payment of debts, *and such other acts* as he is expressly allowed to perform by an order of the surrogate."

This section, save in its last clause, does not essentially differ from the provision for which it has been substituted (sec. 33, tit. 1, chap. 6, part 2, Rev. Stat.; *3 Banks, 6th ed., 61*). How far that last clause operates to increase an executor's authority, pending proceedings for revocation, will be presently considered.

In the case of La Bau v. Vanderbilt (*3 Redf., 414*), during the pendency, in this court, of proceedings for revocation of probate of a decedent's will, a legatee, who would have been entitled to a distributive share if the deceased had died intestate, applied for the payment of her legacy.

This application was made before the Code was enacted, and while section 33, *supra*, was in force. The Surrogate held that that section, suspending as it did the functions of executors, except in respect to certain specified acts, operated also as a restriction upon the Surrogate, and forbade his directing executors to perform any acts in the administration of the estate other than those so enumerated.

Now that section 2650 has been substituted for the provision which Surrogate Calvin construed in the case just

cited, it is clear, of course, that such orders as the Surrogate may lawfully issue, even though they do not relate to the recovery or preservation of property or to the collection or payment of debts, will permit an executor to exercise functions which would formerly have been in suspense, while a contest was pending as to the revocation of probate of the will.

But is it clear that this section, which apparently enlarges an executor's authority, gives of itself any enlargement at all to the authority of the Surrogate? It certainly does not do so expressly, and it seems questionable whether it does so by necessary implication.

An executor of a will, for the revocation of probate of which proceedings are pending, may do, says the statute, "such acts as he is expressly allowed to perform by an order of the surrogate." It will scarcely be contended that this gives to the Surrogate unlimited discretionary power to allow the performance of such acts as he pleases, and if it stops short of this, can the words under discussion be fairly said to enlarge in any degree the jurisdiction which the Surrogate would possess, if they were not upon the statute book?

In his annotated edition of the Code, Mr. Throop approvingly comments upon the decision in La Bau v. Vanderbilt (*supra*), but intimates that section 2650 was designed to permit the Surrogate, pending a contest for revocation of probate, to allow advances to one named as legatee in the will. Influenced partly by this comment of one of the Code commissioners upon the purpose of section 2650, I have in a recent case directed the part payment of a legacy, though not without doubt as to my jurisdiction to make such an order.

Section 2650, however, is distinctly limited in its terms to cases where a decree has been entered admitting a will to probate and where no appeal has been taken therefrom, but a proceeding has afterwards been brought for revocation. It is not applicable to a case like the present.

There is another provision of the Code, to which the petitioner calls attention, as tending to support her claim. Section 2672 treats of the general powers of a temporary administrator. In 1881, an amendment was made to that section, by adding the following words: "The Surrogate may also   .   .   .   direct the payment of a legacy   .   .   .   or a distributive share,   .   .   .   according to section, 2719 of this act, as though he (the temporary administrator) were an executor or administrator."

It is claimed that, if this provision had been in force when the probate contest was pending, it would have empowered the Surrogate to grant the petitioner's former application. If any other construction can fairly be put upon those words, than one which would permit an estate to be distributed, according to the disposition of a disputed will, at the very threshold of the controversy over its probate, surely that construction ought to be adopted.

For, if the petitioner's view of the proper interpretation of this provision is correct, a person may claim an advance as legatee, though he may have no status as next of kin, in the event of the will's rejection; though he is required, upon presenting his application, to cite no person except the temporary administrator; though there may be abundant grounds for refusing probate to the instrument under which he claims; and though, for aught that appears, a genuine will may be in existence, in whose dis-

positions he has no interest whatever.   By way of avoiding an interpretation which might lead to such unjust results, it is suggested by the respondent that the provision under discussion was never intended to apply to cases in which a controversy might be pending over a will.   It is true that the pendency of such a contest is not the only occasion for issuing letters to a temporary administrator. It is declared, by section 2668, that such an officer may, in the Surrogate's discretion, be appointed " where *for any cause* delay necessarily occurs in the granting of letters testamentary or letters of administration."   But it is a matter of notoriety that one of the most frequent occasions for such an appointment is the delay occasioned by a contention over the probate of a will; and it cannot perhaps be fairly inferred, in the absence of fitting words of limitation, that the Legislature intended to exclude that class of cases from the operation of section 2672.

Now, it is urged by the petitioner that, if an advance is under any circumstances to be allowed to one who claims as a legatee, there is much greater propriety in granting an application where the instrument offered as the will has been admitted to probate, even though the contestant may have perfected an appeal, than where the controversy over such instrument is still pending before the Surrogate.   This may be promptly conceded.   But such concession leaves the question here presented still unanswered, for section 2672 equally with section 2650 is inapplicable to the present case.   I am persuaded that, while any controversy over the genuineness and validity of a will is pending in this court or upon an appeal herefrom, the Surrogate has no authority to direct the payment of any legacy, except in such contingencies as are

expressly provided for by the statutes. And, in interpreting those statutes, it is quite immaterial whether they have or have not failed to make provision for cases more deserving of favorable consideration than those to which they expressly relate.

There seem to be four classes of cases, in which this court might be invoked to direct an advance of a legacy:

1. When application is made during the pendency of proceedings for probate. For such a case, provision seems to be made in section 2672.

2. When application is made after the grant of letters testamentary, and no appeal or proceeding for revocation is pending. There, sections 2717, 2718 and 2719 are manifestly applicable.

3. When application is made after probate and pending proceedings for revocation. Section 2650 was apparently designed for such a contingency.

4. When application is made after a decree admitting to probate, and an appeal from such decree remains undetermined.

Within this last class falls the case at bar, and there seems to be no provision of law which authorizes the granting of such an application.

Ordered accordingly.